J. W. BRIGHAM & CO. v. JONES & EVERETTS *et al.*

GENERAL ASSIGNMENT—*Written Instrument Construed.* Where the general form and nature of an instrument executed by an insolvent debtor to a trustee for the benefit of his creditors is that of a general assignment, it should be so regarded, and a provision therein directing the trustee to distribute the estate in a manner inconsistent with the statute relating to general assignments will not avoid the conveyance, but should be treated as a nullity by the assignee, and the estate distributed by him as the statute prescribes.

*Error from Lyon District Court.*

J. W. BRIGHAM & Co. recovered a judgment against *Jones & Everetts,* and garnished D. W. Eastman to recover certain property belonging to the defendants. From a judgment rendered April 29, 1889, discharging the garnishee, who claimed the property as trustee under a written instrument, the plaintiffs brought the case to this court. At the session in March, 1892, it was decided, and there was filed herein an opinion, (syllabus and opinion by SIMPSON, C.,) recommending that the case be reversed, and remanded to the court below for further proceedings. By the court it was so ordered — all the justices concurring. The syllabus therein formulated and declared to be the law is as follows:

"An instrument in writing, executed by insolvent debtors, whereby they place all their property, consisting of a stock of general merchandise, in the exclusive possession of a third person, whom they style a trustee, and, by the terms of such instrument, give detailed directions as to how the business shall be conducted in the future, and provide for the payment of certain creditors *pro rata,* and that the remainder shall be returned to themselves, heirs, or assigns, is intended to and has the effect to leave the absolute control of their business in their own hands, and is absolutely void. An application on behalf of a judgment creditor to have the property of the insolvent debtors placed in the hands of a receiver ought to have been granted."

The motion for a rehearing, which is sought by both parties, was argued on April 8, 1892. On June 11, following, the court sustained the motion, and filed herein the new syllabus, *supra,* and the opinion, *infra.*

*J. G. Hutchison,* for plaintiffs in error.

*Cunningham & McCarty,* for defendants in error.

*Per Curiam:* A reconsideration of the former decision is asked by both parties. It is insisted in behalf of Eastman, the trustee named by Jones & Everetts, that the instrument

under which he took possession and disposed of a portion of the stock of goods is a chattel mortgage, while the opposite party contends that it is a general assignment. If it is a valid mortgage, Eastman is not chargeable as garnishee, and the order discharging him as such should be sustained. If it is to be treated as an assignment, and a valid one, a like result must follow, and it must also be held that the application for a receiver was properly denied. Eastman claims that it was an effort on the part of Jones & Everetts, who became insolvent, to secure their home creditors, and that, as they then had the control of their property, their right to prefer these creditors is beyond question. So far as the record discloses, the debts due to the creditors among whom the assets of the firm were to be distributed by Eastman appear to have been *bona fide*, and no evidence of dishonesty by any of the parties to the transaction is seen. However, if the instrument executed by Jones & Everetts conveying the property to Eastman is a general assignment, no preferences can be allowed, but the property must be distributed *pro rata* among all their creditors.

An examination of the instrument, a copy of which was set out in the former opinion, convinces us that it should be classed as an assignment, rather than as a mortgage. While some of its terms are characteristic of a security, or mortgage, yet its general form and principal features classify it as a conveyance and assignment rather than a lien. The usual form of a general assignment is employed, and it appears to have been an attempt on the part of the debtors to avail themselves of the assignment law. In mortgages, the usual method is to convey the property directly to a mortgagee, with a condition of defeasance; but here the debtors recited their insolvent condition, and proceeded to transfer all their property to another in trust for their creditors. The trustee named by them is given absolute possession and control of the property, and the instrument contains no condition that the transfer shall become void if payment of the indebtedness is made before the trust is executed. There is nothing to indicate any agreement

or consultation with the creditors as to the execution of the instrument or the selection of the trustee. It appears to have been a voluntary act and choice of the insolvent debtors, who, in view of the fact that they were unable to pay their debts, transferred all their property to a trustee of their own selection, as is usual in cases of general assignment. It seems to us that, in view of the language used and the surrounding circumstances, they transferred to the trustee an absolute and indefeasible title of all their property for the benefit of their creditors, and that the instrument should be treated as a general assignment. It is true, they attempted to direct how the distribution of their estate should be made, but such provision is ineffectual. The distribution is controlled by the statute, and any provision in an assignment inconsistent with the statute must be treated as a nullity. The assignment, however, is not avoided by such a direction, but it inures to the benefit of all the creditors. When the debtors in this instance made an absolute conveyance or assignment of their property to Eastman, their control over the same was ended. Then the statute comes in and provides, in the interest of equity and justice, that the assignee is the trustee for all the creditors, and requires him to make a *pro rata* distribution among them. (Gen. Stat. of 1889, ¶ 342; *Bank v. Sands*, 47 Kas. 591, and cases there cited.)

It follows from what has been said that the judgment of reversal first entered by this court must be set aside, and that the orders of the district judge must be sustained. Yet we think the assignee chosen by the debtors, or the one who may hereafter be selected for the creditors, is the trustee for all the creditors, and that he should be required to distribute the assets among all of them "in proportion to their respective claims." The rehearing will, therefore, be allowed, and the orders of the district judge will be affirmed.

All the Justices concurring.