No. 25,044.

H. S. Woodard, Trustee, *Appellant*, v. J. W. Morrissey and E. C. Parmer, Co-partners, doing business as Morrissey & Parmer, *Appellees*.

SYLLABUS BY THE COURT.

1. *Assignment for Benefit of Creditors—Instrument Determined by Its Character and Effect.* In determining whether an instrument is an assignment for the benefit of creditors under our statute (R. S. 60-1301), the test is whether the instrument under consideration assigned the property of an insolvent assignor to any person in trust for the creditors.

2. Same—*Limited Powers of Temporary Trustee.* The temporary trustee named by the assignor in an assignment for the benefit of creditors cannot maintain an action for a claim alleged to be due the assignor.

Appeal from Rooks district court; Charles I. Sparks, judge. Opinion filed February 9, 1924. Affirmed.

*J. L. Travers,* of Osborne, for the appellant.

*W. K. Skinner, F. E. Young,* both of Stockton, *W. L. Sayers,* and *J. S. Parker,* both of Hill City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a trustee named in an assignment for the benefit of creditors. The court sustained a demurrer to the petition and plaintiff has appealed.

The Solomon Valley Milling Company, a corporation, became heavily involved financially and executed the following instrument:

"*Know all men by these presents,* that the Solomon Valley Milling Company, a corporation, of Osborne, Kansas, party of the first part, is indebted to several persons, firms and corporations, named below, and who are hereinafter designated as parties of the second part, *viz.:* (Names of creditors with amount owed each.)

"Now, therefore, in consideration of such indebtedness and to secure the payment of the same to the said parties of the second part, the said party of the first part does hereby sell, assign, transfer and set over unto H. S. Woodard, as Trustee, for the benefit and use of the said parties of the second part, the following personal property now owned and possessed by the said first party, to-wit:

"The mill building situated on the Missouri Pacific right-of-way at Osborne, Kansas, together with all machinery, equipment and appliances thereto belonging or in any wise appertaining; the power plant, including building and all equipment thereto pertaining, the elevator situated on the right-of-way of the Missouri Pacific Railway. Company located at Woodston, in the county of Rooks, state of Kansas, together with all equipment, fixtures, coal sheds and stock in trade, of wheat, coal or other commodity of whatsoever description, contained in said elevator at Woodston or in any wise connected therewith.

"Also all flour, wheat, bran and other milling products contained in said mill building, elevator, or warehouse or elsewhere owned or belonging to it or held for it by others; also all books of account, bills receivable, notes, choses in actions, bills of lading, either in hand or in transit, ledgers and property of whatsoever description, by it owned, whether in possession or not at the delivery of these presents, including insurance policies.

"The said H. S. Woodard, as party of the third part, trustee as aforesaid, is to act for and on behalf of the creditors of the first party hereinbefore named, and the said trustee shall have full authority to forthwith proceed in such manner and way as to him shall seem best to sell the said personal property, and each and every part thereof, to collect all accounts receivable and bills receivable now owing to the first party, and to apply the proceeds of such sales and collections, after deducting expenses incident thereto, toward the payment of the creditors, parties of the second part hereinbefore named, the claims of such creditors to be paid *pro rata* by said third party.

"The amounts set opposite the names of second parties, creditors of the first party, in the schedule above, are not to be taken as binding, but the third

Woodard, *Trustee*, v. Morrissey.

party, as trustee, for such creditors shall have the right and it shall be his duty to examine into and inquire as to the correctness of said amounts, and this deed of trust is made to secure such amounts as may be found due such creditors as determined by the third party, trustee as aforesaid, it being the intent hereof, that if the amount above stated as owing to any creditor shall be determined to be less than the true amount, then said third party, trustee as aforesaid, shall be authorized to pay such creditor or creditors *pro rata* upon the actual amount found to be due, and no more; and if the said trustee shall ascertain that there is justly due and owing to any creditor a greater amount than stated above, then the trustee shall pay to such creditor or creditors upon such corrected amount.

"It is further the intent of this instrument that all creditors of the first party shall be secured by and included in this instrument and that said third party, trustee as aforesaid, is empowered to add to the said list of creditors and to give them the benefit under this deed of trust such persons, firms or corporations as he may hereafter determine to be creditors of the said party of the first part in such sums as the said trustee may find to be due and owing to them.

"In case the proceeds of the sales of goods, wares, and merchandise herein conveyed to said trustee and the proceeds of collections made by such trustee of accounts and bills receivable shall exceed the aggregate amount owing by the said first party, then after payment of such sum and the settlement in full of such claim and the expenses, costs and charges of such trustee, the balance remaining shall be paid by him to the first party, or such person as first party may in writing authorize to receive the same."

This was executed by the officers of the company and the trust accepted by the trustee.

This instrument was not filed for record. No inventory filed nor appraisement made nor bond given, and no permanent assignee chosen. In short, there was no attempt to comply with the provisions of the statute (R. S. 60-1301 to 60-1346), with reference to what should be done with an assignment for the benefit of creditors after it was executed. The statute specifically provides (R. S. 60-1343) for a meeting of creditors and the election of a permanent assignee "and until after such meeting the assignee named in the assignment shall exercise no other powers thereunder than the safe keeping and control of the property coming into his hands under such assignment." So if the instrument hereinbefore set out is an assignment for the benefit of creditors within the meaning of our statute, the trustee or assignee named therein could exercise no power except the safe keeping of the property delivered to him by the assignor until he was chosen permanent assignee in the manner provided by the statute, and since this was not done, the plaintiff

would not have legal capacity to maintain an action. Appellant in effect concedes this, but contends that the instrument is not an assignment for the benefit of creditors under our statute, but is an instrument creating a trust and that as such the trustee may sue in his own name. This presents the only question to be determined.

In 5 C. J. 1036, it was said:

"Whether a particular instrument is or is not an assignment for the benefit of creditors is to be determined by its character and effect, rather than by its form or the name which the parties see fit to give to it. An instrument which properly creates a trust for the benefit of all the assignor's creditors is an assignment, whatever may be its form."

In 2 R. C. L. 661, it was said:

"In order to constitute an assignment for the benefit of creditors in the eyes of the law it is not necessary that the transaction should be so called by the parties, or even, in some cases, that such should have been the intent. If the essentials of an assignment, as prescribed by the law of the particular jurisdiction, are present, it will be construed as such regardless of its form or phraseology."

Our statute (R. S. 60-1301) reads:

"Every voluntary assignment of lands, tenements, goods, chattels, effects and credits, made by a debtor to any person, in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims; and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed."

In *Dry Goods Co. v. Carson*, 59 Kan. 295, 52 Pac. 880, the court was called upon to construe an instrument as to whether or not it was an assignment for the benefit of creditors or a sale of property. In that case the instrument was held to represent a sale. In the opinion, after quoting our statute (Gen. Stat. 1897, § 1, ch. 111; R. S. 60-1301), the court said:

"Under this statutory provision the test is whether the instrument under consideration assigned the property to any person in trust for the creditors." (p. 298.)

In *Brigham v. Jones*, 48 Kan. 162, 30 Pac. 113, it was said:

"Where the general form and nature of an instrument executed by an insolvent debtor to a trustee for the benefit of his creditors is that of a general assignment it should be so regarded."

Tested by the above authorities the instrument in question is an assignment for the benefit of creditors, as that term is used in our statutes.

In 2 R. C. L. 707, under the general powers and duties of the trustee, it was said:

"In all cases the terms of the law will be read into an assignment, and in accepting the trust, an assignee assumes to execute it in accordance with the law governing assignments. The terms of an assignment can never vary the dictates of the law, and so it is held that a debtor cannot in an assignment for the benefit of creditors restrict the liability or extend the powers of his assignee beyond the limits prescribed by law."

In *Chapin v. Jenkins,* 50 Kan. 385, 392, 31 Pac. 1084, it was said:

"The assignment in the first instance is voluntary, and the assignee appointed is selected by the assignor. . . . His selection of an assignee is only a temporary appointment, and the person appointed can exercise no other power than the safekeeping and control of the property which may come into his hands. A permanent assignee is chosen at once by the creditors themselves. . . . The person so chosen administers the trust under the direction of the court and for the benefit of all the creditors."

In 5 C. J. 1235, as to the form of petition in an action by the trustee, it was said:

"In addition to alleging a cause of action against defendant, by means of allegations which are not void for uncertainty or repugnancy, the petition, declaration, or complaint in an action by an assignee must aver, at least generally, matters that go to show the assignee's capacity to sue and that title to the effects assigned is vested in him. However, it is not necessary that the pleading should aver that the assignee has complied with all the requirements of the statute, although it has been held that a complaint which does not contain a copy of the assignment and an allegation that it has been recorded, is insufficient on demurrer; . . ." (See, also, *Rogers v. Coates,* 38 Kan. 232, 16 Pac. 463.)

An assignment for the benefit of creditors by a corporation does not dissolve the corporation (5 C. J. 1176), and it continues to have power to maintain an action for any claim due it until the trustee has been permanently chosen by the creditors in accordance with the provisions of the statute.

From what has been said it necessarily follows that the plaintiff has no legal capacity to maintain this action and the judgment of the court below is affirmed.